**CARNATION COMPANY,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 79-7218.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1981.

Decided March 6, 1981.

As Corrected on Denial of Rehearing and Rehearing En Banc May 13, 1981.

J. Patrick Whaley, Los Angeles, Cal., argued for petitioner-appellant; Musick, Peeler & Garrett, Los Angeles, Cal., David W. Richmond, Miller & Chevalier, Washington, D. C., on brief.

James A. Riedy, Washington, D. C., argued for respondent-appellant; Gilbert E. Andrews, Washington, D. C., on brief.

Before WRIGHT and REINHARDT, Circuit Judges, and MURPHY, Senior United States District Judge.*

WRIGHT, Circuit Judge:

Carnation appeals the Tax Court's determination that its agreement with American Home Assurance Company (American Home) to the extent reinsured with a Carnation subsidiary was not "insurance" for tax purposes, and that payments made thereunder were not deductible as a business expense. We affirm.

## I. FACTS

In August 1971, Carnation incorporated Three Flowers Assurance Co., Ltd. (Three Flowers) as its wholly owned Bermuda subsidiary. It created Three Flowers to insure and reinsure various multiple line risks, including its own and those of its subsidiaries. Three Flowers wrote insurance only for Carnation and its subsidiaries.

Early in September, Carnation made an initial capital contribution of $120,000.

On September 22, 1971, Carnation purchased a blanket insurance policy from American Home. On that day, Three Flowers contracted to reinsure 90% of American Home's liability under Carnation's policy. American Home ceded to Three Flowers 90% of the premium received from Carnation and Three Flowers paid American Home 5% commission plus reimbursement for premium losses.

As a result of the reinsurance contract, American Home was required to pay Carnation's claims and seek reimbursement from Three Flowers.

Prior to the consummation of the reinsurance contract, American Home expressed concern to Carnation about Three Flowers' ability to cover losses. Carnation refused to deliver its letter of credit or other guarantee but agreed to capitalize Three Flowers up to $3,000,000 at the election of Carnation or the request of Three Flowers.

In 1972, Carnation deducted as a business expense the entire premium paid to American Home ($1,950,000). It claimed the 90% ceded by American Home to Three Flowers ($1,755,000) as income of a controlled foreign corporation, and included that amount in the computation of its foreign tax credit.

Upon audit, the Internal Revenue Service (IRS) determined the 90% premium ceded to Three Flowers was not deductible as a business expense. It characterized it as a capital contribution by Carnation to its subsidiary. The IRS also readjusted Carnation's foreign tax credit accordingly. It allowed deduction of the 10% premium paid to American Home and not ceded to Three Flowers.

The Tax Court, 71 T.C. 400, granted the IRS motion for summary judgment based on stipulated facts.

## II. DISCUSSION

### A. Standard of Review

■ Since opinions of the Tax Court reflect the exercise of special expertise, we do not overrule that court unless an unmistakable question of law so mandates. *Estate of Simmie v. CIR*, 632 F.2d 93, 94 (9th Cir. 1980).

### B. Business Deductions

Insurance premiums are deductible as "ordinary and necessary business expenses." 26 U.S.C. § 162(a). The question is whether Carnation and American Home entered into an insurance agreement.

Although insurance is not defined by the Internal Revenue Code, the Supreme Court has established that "[h]istorically and commonly, insurance involved risk-shifting and risk-distribution." *Helvering v. Le Gierse*, 312 U.S. 531, 539, 61 S.Ct. 646, 85 L.Ed. 996 (1941). However,

* Of the Southern District of New York.

[a]mounts receivable as the result of transactions which involve at the time of their execution no actual insurance risk are not receivable as insurance. . . .

*Seward's Estate v. CIR*, 164 F.2d 434, 437 (4th Cir. 1947); *see also Le Gierse, supra.*

■ However, a deduction is not allowed for amounts set aside for self-insurance. *See Steere Tank Lines, Inc. v. United States*, 577 F.2d 279, 280 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 634 (1979); *Spring Canyon Coal v. Commissioner*, 43 F.2d 78 (10th Cir. 1930), *cert. denied*, 284 U.S. 654, 53 S.Ct. 33, 76 L.Ed. 555 (1931).

■ The focus of our inquiry, as in any incidence of taxation, is the substance of the transaction. *Commissioner of Internal Revenue v. Court Holding Company*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). Petitioner's argument, that the existence of insurance depends on the status of the actors, sidesteps this issue. The separate corporate status of Three Flowers and Carnation has no bearing on whether Carnation shifted the risk to American Home or whether American Home shifted the risk to Three Flowers.

The Tax Court found that the three agreements between Three Flowers and American Home, Three Flowers and Carnation, and Carnation and American Home were interdependent. The key was that American Home refused to enter into the reinsurance contract with Three Flowers unless Carnation agreed to capitalize Three Flowers.

■ These related documents must be considered together. *Le Gierse, supra*, 312 U.S. at 540, 61 S.Ct. at 649. They show Carnation attempted to shift the risk of loss due to casualty. The agreement shifted 10% of the risk to American Home and purported to shift 90% to Three Flowers. At the request of Three Flowers or Carnation, Carnation would capitalize Three Flowers up to $3,000,000. The Tax Court's holding as a matter of law that these agreements neutralize the risk to the extent American Home reinsured with Three Flowers is correct.

We note that situation 2 in Revenue Ruling 77–316, 1977–2 C.B. 53 is identical to the facts in our case. It states:

Domestic corporation Y and its domestic subsidiaries paid amounts as casualty insurance premiums to M, an unrelated domestic insurance company. This insurance was placed with M under a contractual arrangement that provided that M would immediately transfer 95 percent of the risks under reinsurance agreements to S2, the wholly owned foreign "insurance" subsidiary of Y. However, the contractual arrangement for reinsurance did not relieve M of its liability as the primary insurer of Y and its domestic subsidiaries, nor was there any collateral agreement between M and Y, or any of Y's subsidiaries to reimburse M in the event that S2 could not meet its reinsurance obligations.

The ruling concludes there is no risk shifting or risk distribution with respect to the risks carried or retained by the wholly owned subsidiary. We reject Carnation's contention that the quoted portion of this ruling conflicts with recognition of the separate status of corporations.

## C. Foreign Tax Credit

■ Income of a controlled foreign corporation is includable in the income of United States shareholders, 26 U.S.C. § 951, and in the computation of foreign tax credits. 26 U.S.C. § 904. This includes "income derived from insurance of United States risks." 26 U.S.C. § 953.

■ Carnation argues the premium paid by American Home to Three Flowers is income derived from insurance. We disagree.

Application of § 953 is predicated on the existence of insurance. The Tax Court's decision that the payment received by Three Flowers was Carnation's contribution to

capital and not an insurance premium is correct.

AFFIRMED.