**BEECH AIRCRAFT CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 84–2658.

United States Court of Appeals,
Tenth Circuit.

Aug. 6, 1986.

Robert E. Liles, II (Charles E. Taylor of Silverstein & Mullens, Washington, D.C., and Theron E. Fry of Martin, Pringle, Oliver, Triplett & Wallace, Wichita, Kan., with him on brief), for plaintiff-appellant.

Gary R. Allen (Michael L. Paup and Gayle P. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel; Benjamin L. Burgess, Jr., U.S. Atty., and Karen Humphreys, Asst. U.S. Atty., Wichita, Kan., with him on brief), for defendant-appellee.

Before BARRETT, SEYMOUR and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Beech Aircraft Corporation, a Delaware corporation with its principal place of business in Wichita, Kansas, brought a tax refund suit against the United States in the United States District Court for the District of Kansas. On its income tax return for the fiscal year ending September 30, 1973, Beech claimed as an ordinary business deduction under § 162 of the Internal Revenue Code certain insurance premiums which it had paid Travel Air Insurance Company, Ltd. Beech Aircraft formed Travel Air in 1972 so that it could obtain products liability insurance from Travel Air which would permit it (Beech), rather than an insurer, to control the defense of claims which might be made against Beech. For 1973 coverage, Beech paid Travel Air the sum of $1,675,000 as premiums for products liability insurance in the primary amount of $2,000,000. Beech claimed the sum thus paid as a premium to Travel Air as an ordinary business deduction under § 162 of the Code. The deduction was disallowed and Beech paid the tax deficiency with interest. It then filed the present action seeking to recover the sum of $834,775, plus interest in the amount of $259,506.39.

After a trial, wherein most of the facts were stipulated, the trial court ruled in favor of the United States, and dismissed Beech's action on the merits. The trial court's detailed Memorandum Opinion appears at 54 A.F.T.R. 2d (P–H) 84–6173 (D.Kan. July 3, 1984). Beech appeals the adverse judgment. We affirm.

The background facts are fully set forth by the trial court in its Memorandum Opinion and will not be repeated, in detail, here. It is sufficient for our purposes to note that in 1971 Beech became dissatisfied with the insurance company then providing it with products liability insurance because the latter, to the exclusion of Beech, maintained control over the defense of an action against Beech which resulted in a jury verdict against Beech in the sum of $21,700,000, $17,500,000 of which was for punitive damages. Because of this event, Beech decided to place its products liability insurance elsewhere. After checking with other insurance carriers, none of which would apparently give Beech the control it desired over the defense of claims made against it, Beech decided to form its own insurance company and obtain its products liability coverage with the newly formed company. Accordingly, Travel Air was incorporated by Beech in 1972 under the laws of Bermuda. The stock of Travel Air was owned, in the main, by Beech, with many of the remaining shares being owned by Beech affiliates. Initially, the directors of Beech were the directors of Travel Air. 54 A.F.T.R.2d at 84–6173 to 84–6175. During the period here in question, all but .5% of Travel Air

business was the products liability insurance issued Beech. *Appellant's Brief* at 12. Finally, the premium paid by Beech, i.e., $1,675,000, for products liability coverage in the amount of $2,000,000, was itself in an amount, which, when supplemented by the interest such sum would earn prior to payment on any claim, would equal the potential maximum liability Travel Air could incur under the products liability policy, i.e., $2,000,000. *Parties' Stipulation of Facts* ¶ 31.

On appeal, Beech frames the issue to be resolved as follows: "Whether the District Court erred in holding that amounts paid by Beech Aircraft Corporation to Travel Air Insurance Company, Ltd. for $2,000,-000 of primary products liability insurance did not qualify as insurance premiums deductible under section 162 of the Internal Revenue Code of 1954." Our study of the matter leads us to conclude that the district court did not err.

Section 162(a) of the Internal Revenue Code allows deductions for all the ordinary and necessary business expenses paid or incurred during a taxable year. Regulation § 1.162–1(a) provides that insurance premiums directly connected with or pertinent to the taxpayer's trade or business are generally deductible from gross income as business expenses. The word "insurance" is not defined in the Code. However, there are well-established principles for determining whether a particular arrangement constitutes "insurance" or something else.

In *Helvering v. Le Gierse*, the Supreme Court observed that "[h]istorically and commonly insurance involves risk-shifting and risk-distributing." 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941) (citing, *inter alia, Ritter v. Mutual Life Insurance Co.*, 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693 (1898)). "Risk-shifting" means one party shifts his risk of loss to another, and "risk-distributing" means that the party assuming the risk distributes his poten-

tial liability, in part, among others. An arrangement without the elements of risk-shifting and risk-distributing lacks the fundamentals inherent in a true contract of insurance. *See Steere Tank Lines, Inc. v. United States*, 577 F.2d 279, 280 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 634 (1979); *Commissioner v. Treganowan*, 183 F.2d 288, 291 (2d Cir.), *cert. denied*, 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625 (1950). Moreover, funds set aside as reserves against contingent losses, as a plan of "self-insurance," where there is no real transfer of risk to a separate entity, are not deemed to be insurance premiums and are therefore not deductible as an ordinary business expense. *See, e.g., Spring Canyon Coal Co. v. Commissioner*, 43 F.2d 78, 79 (10th Cir.1930), *cert. denied*, 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 555 (1931). Self-insurance is not the equivalent of insurance. If one having an insurable risk retains the risk of his own loss, there is no risk transfer, and the arrangement is self-insurance. *United States v. Newton Livestock Auction Market, Inc.*, 336 F.2d 673, 676 (10th Cir.1964). Finally, in matters of taxation, form must give way to substance, *Spring Canyon Coal*, 43 F.2d at 79, and the economic reality of the business arrangement rather than the outward form of a transaction will determine its tax consequences. *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Waterman Steamship Corp. v. Commissioner*, 430 F.2d 1185, 1192 (5th Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971); *Mobil Oil Corp. v. United States*, 8 Cl.Ct. 555 (1985).

The district court held that in the instant case there was not, in reality, any shifting of risk by Beech to Travel Air, and that as a matter of economic reality any loss sustained by Travel Air in connection with a claim made against Beech was paid by Beech itself.[1] We agree.

---

1. Following are some of the more significant facts underlying the district court's decision:
   1. Outside ownership of Travel Air was insignificant, and Travel Air was capitalized for not more than $150,000, during the period at issue.
   2. Initially the directors of Beech were the directors of Travel Air.

In our view, *Stearns-Roger Corp. v. United States*, 774 F.2d 414 (10th Cir.1985), decided after the ruling by the district court in the instant case, bears directly on our present problem. There we held that payments made by the taxpayer to its wholly owned subsidiary to provide insurance coverage to the taxpayer, its other subsidiary companies, affiliates and associated companies were not deductible as insurance premiums because the risk of loss did not, in reality, leave the taxpayer. Beech's counsel in the instant proceeding, who also appeared in *Stearns-Roger* as counsel for Beech as an *amicus curiae,* argues that Stearns-Roger is either "distinguishable" or "wrong." We believe it is neither, and, for all practical purposes, is dispositive of the present appeal. We agree that Beech and Travel Air are separate corporate entities,[2] and that Beech formed Travel Air for a legitimate business reason. But that does not *establish* risk-shifting and risk-distributing, nor does it *foreclose* a finding or conclusion that there was neither. *See Mobil Oil Corp. v. United States,* 8 Cl.Ct. 555 (1985).

Judgment affirmed.

3. During the period in question all but .5% of Travel Air's business dealt with providing products liability coverage for Beech.

4. Beech and Travel Air understood that the premium amounts plus their investment income would equal the total amount Travel Air would be required to pay for any covered loss Beech incurred.

2. Beech argues that disallowance of the deduction for the "insurance" premiums at issue is inconsistent with the doctrine of separate corporate entities. In *Moline Properties v. Comm'r,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), the Supreme Court recognized that a corporation created for a legitimate business purpose is a taxable separate entity. By examining the substance of the transaction between Beech and Travel Air, we do not disregard the separate nature of the entities, rather we seek to determine whether the requisite elements of an insurance contract are present.

This "separate taxable entity argument" was first rejected in *Carnation Co. v. Comm'r,* 640 F.2d 1010 (9th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981) in a similar fact situation. Other courts faced with the issue, including the district court below and this court in *Stearns-Roger,* have also rejected the argument. *See Mobil Oil Corp.; Clougherty Packing Co. v. Comm'r,* 84 T.C. 948 (1985). *But see Crawford Fitting Co. v. United States,* 606 F.Supp. 136 (N.D.Ohio 1985) (distinguishing *Carnation, Stearns-Roger,* and *Beech* on facts); *Clougherty,* 84 T.C. 948, 967 (majority's treatment of transactions "crash[es] head on into the holding in *Moline Properties v. Commissioner,* 319 U.S. 436 [63 S.Ct. 1132, 87 L.Ed. 1499] (1943)") (Gerber, J., dissenting).